We only have one argued case remaining on the docket for this morning, Lochner Technologies v. VIZIO, Inc. You want four minutes for rebuttal, is that correct? Yes, thank you. Mr. Liddell? Liddell. Liddell? Correct. Okay. And you're going to divide eight and seven, is that correct? Yes. Okay. Okay. You may begin. Thank you, Your Honor. This case involves, on appeal, two issues arising both under Section 112. They're related issues. They were both decided on summary judgment by the district court below, and we submit that both of them involve two sets of error at the district court, both legal error and error in failing to recognize material questions of fact that would preclude summary judgment. Let me ask you about this claim construction. This is not the construction that was proposed below by you, was it? I believe it's similar to that that was proposed by the plaintiff. It's perhaps not the precise wording, but it's somewhat similar in the sense that I think the core issue on claim construction was an attempt by the defendant to introduce additional limitations that were not recited in the claim, and the district court rejected that. And as we noted in our brief, the claim construction is not appealed. Neither party has challenged the district court's claim construction on appeal. Right. I understand that. But your proposed construction below, and I'm not sure I understood it at all, but you said input-output system is not itself a structural limitation, but it rather is defined by the wireless transceiver, user interface, and arrangement for providing limitations recited later in the claim. What do you mean by that? Well, I think, Your Honor, the question there was really one of whether this, what I'll call an intermediate preamble. So the structure of Claim 1, you have a wireless computer system, and that has essentially two core pieces. There's a base system and an input-output system. And the structure of the claim is written such that there are these sort of intermediate preambles. So you have the first, the beginning preamble, a wireless computer system comprising, and then there's sort of this intermediate preamble of a base storage and control system, including you go further down the claim, and then you have at least one input-output system. And I think the question there was really one of whether those intermediate preambles were, in fact, claim limitations in and of themselves, much like the typical analysis of whether a preamble is a separate claim limitation or whether they were merely introductory statements for the two components. I think it's fair to say that the claim does require, of course, a base system and an input-output system. The question is whether those impart any additional limitations beyond those recited in the… So what does put bounds on this claim? I mean, are you saying it could have anything at all as long as you could still carry it around? I think, Your Honor, what we're saying is that the system has certain required elements that must be present. It has the requirements, as the district court found, that it must be portable, and that the ways in which future embodiments might add to an invention such as this are not something that the applicant has to recite. The core issue we're addressing, and in particular I think this is in connection with the written description issue, is whether the applicant has to describe unclaimed elements that might be added in future embodiments of the invention. This court's case law has, we submit, uniformly said no, those are not required to be part of the disclosure. The Cordes case, the Martek case, the Amgen case all say you don't have to have a description of future embodiments, that that's not the test. You describe the claimed embodiments. The district court required quite expressly that that describing the claimed embodiments was not enough, and that's really… I think that's true as a general proposition, right? If you disclose certain elements of what your invention is in the spec, and then you recite those elements in the claim, then you'll have written description support for that claim, even though the claim encompasses other additional unclaimed elements. I think we have maybe a different situation here, because your portable unit, as you disclose it, seems directed to a very specific notion, that it be limited in the types of elements that should be included in that portable unit. And now you have a claim that does encompass a portable unit that has all sorts of elements in there. Well, I disagree that the patent requires that the portable unit only include the certain elements. Well, it's composed essentially of three components, right? The specification does note that those three are key components, but it also contemplates that there could be other components that different power supplies, for example, might be utilized. It references different things that might be part of this, such as a microcontroller, graphics cards, various different things that might be utilized to implement the portable input-output system, all of which are not only… What about a CPU? Well, as we set forth in the record, a microcontroller, such as disclosed in the specification, does have a CPU. Dr. Brody explained this in his declaration, perhaps most directly in paragraph 32. That's at page 1056 of the appendix. But throughout his declaration, things like a CPU… So essentially, I think the argument made by the appellees and to some extent by the district court is that there are three components that allegedly were not described in the specification that somehow needed to be, none of which are claimed, a CPU, RAM memory, and some kind of non-volatile storage. Now, we disagree that those need to be described in the specification, but as a question of fact, unwritten description, there is uncontroverted evidence that they were described in the specification. So the specification expressly describes microcontrollers and graphics cards as being potentially part of the portable input-output unit. Those items, as explained in the uncontroverted declaration of Dr. Brody, encompass RAM, CPU, non-volatile storage, all present in these devices, which are expressly described as being something that could be included in the portable input-output system. So even to the extent that the written description requirement does require some disclosure of these three items, the disclosure was present in the specification, and the evidence that it was present was unrebutted. Can I just ask, the claim construction that you obtained, have not appealed, and stand by encompasses devices in which the CPU and hard disk drive are on the input-output system. Is that right? I think it is possible that those things could be on the input-output system. Is that different from what I just said? It encompasses devices in which those two things, the CPU and hard disk drives, are part of the input-output system, not part of the other half of this wireless system. I wouldn't say not part of the other half. I would say that they're part of the input-output system. You might also have, for example, a hard disk drive on the basis. But they would be in the input-output system. They could be in the input-output system, yes. So column two says that the CPU and peripherals, e.g., hard disk drive, are on another unit, namely not on the input-output system. Putting completely to one side the district court's reasoning about how you have to affirmatively describe the world of unclaimed things that could be included, why isn't the claim construction that you stand by, presumably because you need it for infringement, simply contradictory to the affirmatively expressed restriction, the CPU can't be on the input-output system? Well, Your Honor, I think I read the specification a little differently insofar as the claims contemplate that the base station must have a CPU and a hard disk. I don't see words of manifest exclusion or restriction of the type that this court has required to impose that limitation on the input-output system in this part of the disclosure. This is column two, line nine. The central processing unit and any desired peripherals, e.g., hard disk drives, printers, telephone modems, etc., form parts of another unit. How does that not mean that the CPU is not on the input-output system? Well, I think the key is you're using the definite article, the CPU. So this uses it. I understand. And so let me try to reconcile those two. The claim contemplates that you have a portable unit and a base unit and that some of the core computing power, if you will, is coming from the base unit where you have a CPU and hard drive and things like that. And it contemplates that the portable unit would be able to sort of function as a remote display, if you will, using that computing power. That does not exclude the possibility that the portable unit might also be usable in other ways in which in a different usage context it might have its own CPU for certain other functioning. And so I think the claim system contemplates a base system and a portable system where when operating in this form, the CPU that's important is at the base system. But I don't think that excludes the possibility that there might also be a CPU on the portable unit. And what was it that you think you distinguished in the prosecution history passages in which you said some pretty explicit things about how this system differed from prior art systems? Well, I think what was distinguished was really not a system where you had this portable unit that could provide that display functionality in real time and in a complete and continuous manner. That seemed to be the primary focus of the distinctions over the prior art, that there was a system that had this ability to kind of work in concert, whether wirelessly or in theory over wires, with the base system. And that those two things providing kind of a combined computing system seemed to be the primary distinction. But you called it a dumb terminal. How could you now have something with a CPU in it and still be a dumb terminal? Well, I think the dumb terminal may be a preferred embodiment. I don't think it's the only embodiment. And I don't think it would be appropriate, and certainly the district court did not construe the limitation or did not construe the claim to be limited to the preferred embodiment. But that's how you distinguished your claim language over the prior art. I don't believe you were telling the patent examiner in that instance, well, one of the embodiments that are encompassed by this very broad claim is a dumb terminal. So please distinguish this claim, this broad claim, over the prior art, given that the broad claim covers this narrow embodiment of a dumb terminal. That doesn't make sense. Well, I don't think that the argument to the examiner was this is allowable because it's a dumb terminal. I think that's certainly an embodiment, but I don't think that words of exclusion or restriction, either in the specification or in the file history, indicate that that was intended to be a limitation. Well, you agree that in the prosecution you needed to find a way to overcome prior art that had basically two computers that were communicating with each other. And so therefore you needed to focus on your portable input-output system and explain away how it didn't really have the kind of processing power needed to execute applications in the same way that the prior art remote portable laptop could. And that's where we landed in the prosecution history statements with notions that your input-output system that's remote is really just a dumb terminal that's really essentially for input-output, and that's it. And I think the distinction I would draw is that a device can function in some instances as essentially a dumb terminal even if it has a CPU or memory inside it, and that that doesn't make it outside the invention just because it may also in some other instances be used in a different way, and that the system contemplates that you have a base system and a portable input-output unit with certain required elements, and that there certainly exists the possibility that a future embodiment as we have here might implement that claimed system and in some instances operate that way. But you might also be able to operate the portable input-output unit in a different mode altogether in which it's taking advantage of CPU and memory to function in a different way. You get around the statement that says applicants are not claiming a device that is a stand-alone processing system that can remotely communicate with a host computer. I mean, you're saying that you're not claiming anything that has those functions. Well, I think, and I think as I said, the system that's claimed is one that can function as, to use the court's words, a dumb terminal. The fact that it may also separately function in a different way by itself, that's not the claimed system. The claimed system contemplates both pieces, and so while a device that's part of the system may by itself be a different thing, when used in, when combined in this claimed system, I still think that that's contemplated by the invention. All right. We'll restore your rebuttal time to four minutes, and we'll give each of the other two arguers two minutes apiece additional, if you need it. Good morning, Your Honors, evening briefs for Apelles, Vizio, and Toshiba. Can I understand what the acute devices are that are your product? The acute devices are tablets, generally, that incorporate CPU, RAM, you know, have full processing capability. We would say that the devices that are being accused are completely distinct from the invention that was disclosed in the 598 patent. Why didn't you appeal the claim construction determination? Well, based on this court's type right decision, we actually didn't think that we could appeal. We won on this claim construction. I'm sorry, same thing. Argue as an alternative ground. The question was not limited to filing a separate cross appeal, not a technical matter. Why did you not, here as Apelles, or as cross appellant, challenge the claim construction as a rule? Because it was, well, basically, Your Honor, because it was dispositive of invalidity. We did, as you know, in the lower court, claim to the district court that the claim construction should be narrower and should be limited based on the specification and the prosecution history, based on the law that the written description in the patent specification must support the full scope of the claim. And so we did propose a much more limited construction. It wasn't your idea to move for summary judgment on written description based on the claim construction that the court came up with on its own, was it? Well, immediately, in fact, at the same time as the court issued a partial claim construction, the court also issued an order permitting summary judgment to be filed, literally, on a date certain, within weeks, on three grounds. And those grounds were written description, regards as invention, and enablement. We had also raised in claim construction, and in our brief here, an indefiniteness argument, on which we believe we would also prevail. But you limited your indefiniteness argument on appeal to the display screens and to the other elements that we don't have any record on because the trial court never ruled on them. That's correct, Your Honor. And that's what the indefiniteness argument was based on in the district court as well. Okay. So you're not arguing that indefiniteness applies because of the broad claim construction as it relates to the input-output system? We are arguing that neither the written description nor the regards as invention requirements of Section 112 are satisfied by this claim construction. That the input-output system of the 598 patent is portable based on the disclosure in this invention. It achieves portability solely by limiting components. It's defined by exclusion. That is the solution to portability. That is the novelty, if you will, of the 598 patent. It's the only invention that's described in the specification. It's the only invention that there's any evidence that the inventors possessed. But they're here in this court and in the court below, as Mr. Liddell has stated, reading this disclosure on portability solutions that the inventors didn't invent and didn't describe. That goes back to the claim construction issue, doesn't it? I'm struggling here because the written description analysis seems to be odd. A very unusual way to approach written description. And yet the claim construction seems to be odd. But you've left us stuck with the claim construction. Well, I don't believe the court is stuck with the claim construction. As I said, we felt under the typewrite case we couldn't appeal it. That it was something that, because we could not appeal a judgment that we want, because we could not appeal on issues that relate to non-infringement as opposed to invalidity. Right, but as Judge Toronto pointed out, you could have argued as an alternative ground that the claim construction was in error. Well, we understand that now. But in fact, we think that the judgment of invalidity can be affirmed based on the claim construction that the court gave and based on the way that Lochner is reading its claims. What if, hypothetically, we disagreed with the written description ground of invalidity? But we also think there's something not quite right with the current state of play with the claim construction. There's nothing we can do here to comment on that, is there, at this stage? Well, I think that there are other grounds for affirming the judgment of invalidity other than the claim construction. Okay, well, what if we elect to not pass on those because the district court did not pass on those, at least not yet? Well, the district court definitely ignored our argument that the display device... So then what do we do? Would we just say this written description analysis is flawed, reverse, and remand, and that's it? Well, that is a possibility. The court could remand with instructions as to what is a more appropriate claim construction. The court could look to... We think what is a very solid situation based on the interpretation of these claims by the Lochner parties that the invention that they are claiming under this construction is not what the inventors regarded as their invention. That when you look at the prosecution history, when you look at the specification, it's very clear that what the inventors regarded as their invention was a very limited input-output system that was made portable solely because it was limited to these three basic components. And that's what made it portable and inexpensive. And I could go through... We have many examples... But to be fair, they've pointed out that there's other elements that are disclosed in their spec that can also be part of the portable input-output unit. There's a mention that the graphics card itself has some kind of memory, and perhaps the microcontroller also has some kind of processing capacity. It may not be the kind of processing capacity that actually on the handset can execute applications in the way that we're all familiar with today. But maybe there's just some, let's call it, incidental forms of processing capacity. Some incidental forms of storage capability, capacity. So then it makes it harder to say, wouldn't it, that there's absolutely no written description for any kind of portable input-output system that has some kind of computing power, some kind of memory. Well, I would disagree with that, Your Honor, in this sense. I don't believe there's any configuration disclosed in the patent specification that actually can process applications that have a significant amount of storage. That wasn't my question, though. My question was about what I'll call minor forms of storage and minor forms of processing. Well, let me address that. Let me address the graphics card. The only thing that the experts that were proffered by the Lochner parties said about the graphics card was that in some instances at that time it could have RAM. Under this Court's precedent, that is not an inherent disclosure. That is not a disclosure that can be attributed to the invention because it doesn't necessarily disclose RAM. And there really is no... If you pick through the declarations of the experts, you won't find either expert suggesting that at the time that this patent was filed and this invention was claimed, that there was any device out there that had the capabilities that they're now trying to ascribe to this invention. So they don't say that about the graphics card. In isolation, they mention it could have RAM. The graphics card has appropriate memory locations and the stored information is then supplied to the display device. This is column 5. It can have memory locations. There can be very temporary small storage, which I think is what Your Honor is getting at. The microcontroller is a keyboard microcontroller. It creates a serial signal that reports on the status of the keyboard. None of these things, even together, could execute applications and could be read the way that the Lochner parties are reading and that this broad claim construction encompasses. The point I'm trying to make is maybe this case is better understood as more of a prosecution disclaimer question than a written description question. Your Honor, we certainly vigorously argued that during claim construction. We strongly believe it is a prosecution disclaimer case. The court didn't agree with that. What written description cases are there that permit use of the prosecution history to determine what the invention was that's disclosed in the specification? With respect specifically to the written description argument, what we rely on is that these are admissions. We don't think they are. We're not saying that the prosecution history is part of the specification, but you have Lochner coming into this court on an appeal from a rejection of the patent and saying, let me tell you what our written description discloses. It only discloses this input-output system that doesn't have a CPU, doesn't execute applications. It's the way the Lochner defendants say their written description should be read. Under this court's cases, I believe there are several cases. You're not saying that normally whether a written description is adequate is something that is assessed other than looking at the four corners of the specification. You're saying that you just happen to have some admissions that you want us to take into consideration. Yes, Your Honor. There are specific admissions about how to read the written description by the inventors, and we would say that with respect to the regards-as-invention argument, we believe that the prosecution history can be taken into consideration. Okay. I want to talk about that regards-as-invention argument, but do you want to switch counsel? Yes, Your Honor. I will defer to the time for now. Let me talk about regards-as-invention. The only case that you rely upon is Allen Engineering to argue that we have adopted some totally different theory of this regards-as-invention as a different manner for invalidating patents. But in Allen Engineering, that was so factually distinguishable from this one. The inventor got on the stand and said, yeah, that's not what I invented. I mean, the facts were fundamentally different than here. Well, Your Honor, I would disagree with that. Allen had a fundamental inconsistency between what was claimed and what was disclosed in the specification, and the same is true here. There's a fundamental inconsistency between saying in the specification and saying repeatedly during prosecution that the input-output device is limited to specific components and saying something different now, an argument-claim construction where the input-output device includes anything. Well, Allen Engineering, that was the case with the gearbox, right? That's correct. You could pivot a certain way, and I think the claim said you can pivot in some perpendicular plane. That's correct. But the fact specifically said the gearbox cannot pivot in a perpendicular way. That's correct. There was an inconsistency. And so the conflict there between the claim and the spec could not be more stark, could not be more plain. That's correct. And if what we see here is something that's at least a level more ambiguous than that, I mean, there's an inconsistency there, but it's not nearly as stark as it was in Allen Engineering. I think you'd have to agree with that, right? I think that's correct. I think the inconsistency arises due to Lochner's position in the litigation and Lochner's claim that the input-output device is a complete computer. But maybe that's a claim-construction argument, then. I don't disagree with that. And if I can go back, I'll come back. I think there are other cases that address regards to this invention and support in addition to Allen. But with respect to the... What are they? For example, CCPA ruled in rate harmony. It is 476... Is this in your red brief? 998. It is not cited in the brief. The question of additional cases that support regard to the invention, if I may address that. There, the CCPA found an inconsistency between what was claimed and what was disclosed. And the basis was the claims were cited, 0.5% of a component was required for stabilization. During prosecution, the inventor submitted an affidavit that said 0.9% was required. There then became an inconsistency between what the inventor regarded as his invention, a higher percentage was required, and what was disclosed in the specification and what was claimed. Likewise, in Ray Prater, 415, Fed 2nd, 1393. Again, the CCPA used regards as his invention to say a claim that encompassed something that could be performed with pen and paper, which the applicant said, that's not my invention because I know that's not patentable. And the Federal Circuit, the CCPA said, well, it's encompassed in what you've claimed. Therefore, there's this inconsistency between your claims and what you regard as his invention. And additionally, just last year, this court in a non-precedential decision affirmed a district court case, the Eastern District of Texas, in Juxtacom, Texas software, BTIBCO. In that case, the district court found a fundamental inconsistency between what was claimed and what was in the specification. And there, the claim said, data transformation must occur in the system interface. The specification described the interface as merely defining the scripts that perform data transformation. The district court said, and this court adopted and said it was adopting the analysis of the district court, that because of this fundamental inconsistency and contradiction between what was claimed and what was clear was regarded as the invention, the claims were invalid under Section 112. Now, I agree... Why didn't you cite any of these cases in your brief? Your Honor, I don't have an explanation for that. We cite Allen. I think Allen is consistent, establishes the doctrine that it is a separate ground. And are you saying that in these cases they went outside the four corners of the claims and the written description? Certainly in Cormany they did. In Cormany, the CCPA looked at the affidavits submitted by the inventor during prosecution. Now, the Solomon Court, the Federal Circuit in the Solomon case, looked at 112 regards as an invention as well. And there, the Federal Circuit was dealing with inventor testimony in litigation and said, well, we're not going to look at inventor testimony in litigation for regards to invention. But it did cite Markman and said, Markman, when you do claim construction, claim construction is similar to the question of law that is regards as an invention. You can look outside, obviously, the specification and look at prosecution history. In fact, this Court, just three months ago, issued a decision looking at indefiniteness and what's appropriate to consider in indefiniteness. And there, this Court said, in the Anoko case, the Apple, that in looking at indefiniteness, you must look at the prosecution history. Well, if the indefiniteness analysis under 112 paragraph 2 tracks the regards as invention analysis under 112 paragraph 2, then it is appropriate. Can I ask kind of a general doctrinal question? Yes. In what respects does the 112.2 or B, regards as an invention, overlap with, or more importantly, differ from, our modern written description? I think it does in two ways, Your Honor. First, regards as invention is a question of law. A written description is a question of fact. Second, written description, generally speaking, the prosecution history is not considered. The cases say, Ariad says, look at the four corners of the specification. With respect to regards as invention, because it is a question of law, because it is analogous to the indefiniteness, looking at the prosecution history is perfectly appropriate and, in fact, may be required. I think there is, to a large extent, overlap between those analyses. Should we regard that as an oddity or as reinforcement of a common theme? I think regards as invention comes up in unusual situations. And we think we have one here. Because during prosecution, the patent applicant was saying what his invention was not. Repeatedly, my invention, the input-output device, is not the following things. And now, the patentee has changed that. It is an unusual situation, just like Allen was unusual, to have claims that were inconsistent with the specification. So I think the regards as invention comes up more unusually, may overlap with written description. But it is, as this court has said, a separate doctrine. I guess an alternate view of what happened in the prosecution history is the applicant did, in fact, very clearly describe what he regards as his invention when he essentially construed his own term, portable input-output system, to mean something very particular and also to make clear that it's very particularly not something else. And so in that sense, there isn't a 1-12-second problem, is there? Well, under the claim construction that we argued to the district court, that's correct. What did you argue to the district court? We argued that it should be the input-output unit consisting essentially of. And the district court said, I will not including to consisting essentially of. She found those to be terms of art that she would not change and would not interpret the claim term meaning that. Consisting essentially of. I myself am not really sure what that covers and what that excludes. I mean, I guess, to be specific, I guess you're now saying, what you had contemplated by using that proposed construction was a portable input-output system that excluded any kind of capabilities of executing applications right there on the portable unit, right? But that's not exactly what you said in your proposed claim construction. Well, it's not. Claim constructions typically are not. The claim excludes the following. Our argument for what consisting essentially had to mean  to execute applications. Substantial amounts of memory. The same things that Lochner said during prosecution were excluded, that those were excluded by this construction. You asked the question about what to do if this court disagrees with the district court's claim construction. I think as a matter of law, this court can determine what the claim construction is. I think following that, if that was the case, if the court does not affirm written description or regards invention, Lochner would need to concede summary judgment of non-infringement. I mean, the devices that are accused are tablets with full computing power. What would be the base unit in your accused device? The base unit, as Lochner has said, is, for example, a server system that provides like the Netflix service. So if the Netflix server communicates wirelessly with your tablet device and you have the application and you execute Netflix, that's the entire system. What we've focused on though, obviously, is the tablet. OK, your time is up. Thank you. I want to start turning back to a question that I think Judge Chen asked, but also others, regarding the appropriate procedural remedy here if the court disagrees with the written description and regards it as invention rulings of the district court. I would agree that the appropriate remedy here is to reverse and remand. We submit that under this court's precedent, when a party doesn't appeal a claim construction and it's not raised in their briefs as a challenge, that argument is waived and that it's not appropriate for the court to revisit that when neither party has challenged it in the proceedings. But do you agree that our case law didn't let them appeal it? I would say that the court's case law does not but it does hold that when a party chooses not to and makes the tactical litigation decision, for whatever reason, not to, that that constitutes a waiver and that that waiver does have a binding effect. I think I'm not aware of any case that precludes or would have precluded the defendants from appealing in this case and challenging the court's claim construction, as Judge Taranto suggested, for example, as an alternative ground. They chose not to do so, presumably for reasons of wanting to sustain the validity law. But do you think, even if we would remand, that they'd be stuck with that claim construction forever and couldn't even appeal it at the end of the case? I do. I think that this is something that was a possible challenge here and was waived by not challenging it and that that does have a collateral estoppel effect going forward as the law of the case. I'd like to turn briefly to the second issue that I didn't really speak to before, the regards as his invention requirement. I think the court correctly pointed out that the Allen engineering case seems to be the only one really applying this principle. And even there, it's a little questionable. This court in Ariadne, for example, examined en banc the question of whether there is a separate written description requirement from the enablement requirement and really carefully examined those questions. There's certainly been no similar kind of analysis of this regards as his invention requirement. We are aware of only the Allen engineering case as a precedential opinion of this court ever actually purporting to apply that requirement as a separate ground of invalidity. I think the following two things are both true. One is that whether in this court or its predecessors, regards as invention has, in fact, been relied on as a distinct ground from its companion in 112 paragraph 2 and from everything in 112.1. And second, that that has been rare. And therefore, that the doctrinal elaboration of what that means is extremely thin. But it's not a dubious doctrine. Well, I would say, Your Honor, that as a matter of statutory construction, it's not clear to me that it should be regarded as a separate doctrinal requirement. The way the statute is written seems to me to contemplate that almost as a direction to patent applicants. When you are writing your application, you have your specification that provides disclosures. And then when you want to write down what you regard as your invention, you write that in the claims. And that essentially, what you write in the claims is by definition what you regard as your invention. You may later find that the specification didn't support that. It may be narrowed during prosecution. But the claims are where you write down what you regard as your invention as an applicant. And I would agree with you that the cases in which this requirement, to the extent it is such, has been discussed are indeed rare. And I would submit that they arise only in the context like Allen Engineering, where you have this irreconcilable, clear inconsistency between the specification that says the invention must be one way and the patent claim says it must be the opposite and the two cannot be harmonized. Don't you have a little bit of that problem though here in connection with the language in Column 2 that Judge Toronto earlier referred to where you specifically state that the CPU is in a different system in the base unit? I don't believe so because I think that the discussion at Column 2 states that the CPU, for purposes of this configuration, is in the base system. But it doesn't exclude the possibility that there might also be a CPU in the portable device. What is the corresponding structure in the specification for your claim display element producing an output signal? So the specification describes a... Yeah, just tell me what the structure is. So for the display element, Your Honor, I think most of the disclosure that we would point to is in Column 5, particularly, generally speaking, between lines 25 and 49, thereabouts. It's also discussed in Dr. Brody's declaration, paragraphs 35 to 50, which are at pages 1057... The structure is? The structure is a transceiver and a serial... I'm going to misstate it a little bit, but it's a converter that sends the signals and converts them from serial to parallel or parallel to serial. Okay, so which element? You're telling me it's the transceiver that is the display element that produces an output signal producing bursts with delays between the bursts during which delays in information is transmitted? Yes.  Yes, the specification discloses those things as part of the display element. But you also recite a transceiver also in the base unit section. That's correct. So it's twice? I think the... The display element and the transceiver are the same thing? No, I think that the transceiver perhaps may be... Let me see if I can state it a little more clearly. The display element, if you will, is something that converts the signals to be sent back and forth. The transceiver is largely involved in transmitting them. There's also some circuitry that does the conversion and both of those are described. So then what's the display element? I think the display element, in fairness, would probably be focused mostly on the circuitry that does the conversion and setting up the... Right, and where's that in respect? Again, I think that's discussed at column five when it talks about using the addressing signals. And again, the display... It sounds like you don't have a noun you can point me to. Well, I think... I'm trying to find the exact wording the specification uses, but it talks about... conversion of parallel signals on a data bus and I think the point is there's not one sort of name that I can give to a piece of circuitry. There's a couple of things that are disclosed here that perform that function in combination. There's the data bus, there's the serial and parallel conversion. Those are all part of the display element as recited in the specification. Is that your best answer? It is, Your Honor, with one exception. I do want to be clear. This is also an issue that we would submit was not passed on by the district court and is therefore not right for this court's consideration. All right, thank you. The case will be submitted. Thanks. All rise.